In this review of a social security disability case in which the sole issue is the adequacy of the administrative law judge's findings as to the credibility of the plaintiff's testimony. It's a fundamental principle of judicial review of administrative action that we defer to administrative law judge's findings that are supported by substantial evidence. It is crucial to that model that there be such findings. In this case, there are specific requirements in this circuit for administrative law judge's findings as to the plaintiff's credibility. They are, one, there must be specific description of those things, those pieces of testimony that are not credible. And two, there must be specific, clear, and convincing reasons given for finding that testimony not credible. The administrative law judge in this case made only one finding about the plaintiff's credibility. And he said the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above-residual functional capacity assessment, referring to a finding he had made about functional capacity, how long the client could stand, how long he could sit, how much weight he could lift. That was the only finding made by the administrative law judge. That is a boilerplate finding. This has been noted in our brief. It's been made thousands of times. It now appears in almost every ALJ decision I read in Social Security. So even if the ALJ made an error in not giving the specific, clear, and convincing reasons, including identifying the evidence, we've held that if the ALJ's pathway can be discerned and the error is harmless, then we can still uphold that ruling. So maybe you could address why the error in this case wasn't harmless. The claimant testified to at least four different impairments or inabilities of his own related to his bladder incontinence, pupil incontinence, his necessity for catheterizing multiple times a day, and his need to spend at least two days a week in bed because of his orthopedic impairments. The vocational expert testified at ER between 82 and 87 that each of those individually would have mapped out the claimant's crude malpractice. Now, some of that evidence was contradicted by medical evidence in the record, so that there was an inconsistency in the record. For example, Mr. Treigler testified to fecal incontinence. But the record, or at least a portion of the record, showed that he himself had denied fecal incontinence. There were some other inconsistencies as well for at least some of the claims. So what do we do about the fact that there are inconsistencies or contradictions between his claims and the medical evidence in the record that would support the ALJ's determination? We look into the ALJ's decision to see whether the ALJ looked at those inconsistencies and resolved them one way or the other. Well, that would say that you would never have harmless error, but our case law does say there can be harmless error. So even though the ALJ did not expressly explain the evidence that supported its holding, there was evidence in the record that did support its holding, or his. You would have harmless error in cases in which the testimony of the claimant did not, in fact, on the record, lead to a finding of disability, would have made no difference. In the words of Molina, it was inconsequential to the ultimate non-disability condition. That can happen. It depends on the nature of the testimony. If the ALJ doesn't tell us which thing he believes, let's say there are two things that are contradictory. By the way, some of the testimony, like the loss of bladder control three times a week, was not contradictory, anywhere in the record. And they're not contradictory. Well, there was nothing in the record suggesting that he had loss of bladder control during the day. All of the medical evidence that I saw in the record indicated that he had a nocturnal difficulty. And during the day, he had difficulty voiding the bladder. So, in fact, it did seem to be contradicted by the medical evidence, at least, that I reviewed. Okay. Now we're down to a question of what's in the record, of course. But I do believe that his testimony was, and there was other evidence, that he had urinary incontinence both at night and in the day. That was his evidence. But I guess the ALJ's decision was, I don't believe him to the extent it disagrees with my RFC. Right. So I guess, I'm not sure to what extent, but I think we do look at whether the ALJ's determination was supported by evidence in the record. And that was what I saw. The medical evidence did support the ALJ's finding on that point. It could have. We could reason backwards. But in order to do that, we would have to say, okay, because we're talking about harmless error here. Is this inconsequential or consequential to the outcome? We would have to go to what the vocational experts say in response to the hypothetical, which includes the RFC, and say, okay, let's look at this RFC now and back up to the claimant's testimony. And can we now divide, going through all that testimony, which of this the ALJ believed and which he didn't? We cannot. There's nothing about that finding that tells us anything about this case. It could apply to any case. All it does is divide the universe of claimant's testimony into two things, credible, not credible. That's exactly as specific as it ever gets. That's clearly error. Now, the question is whether it's harmful. We think that since this testimony led with the E in four different respects to say it could not work, each of them independently. Let me go on to the next step. Assuming this panel were to agree with your premise, premises that, one, it was error for the ALJ only to make that one credibility finding, and, two, that because of that error, you're entitled to some kind of relief. Now, you, I think, in your brief say, well, this is a case where we should apply the creditors' true rule, right, and remand for the payment of benefits. But Judge Simon, on the other hand, in district court, said, no, there's still other issues. So it should be sent back for further development of the record. Now, what's wrong with Judge Simon's conclusion there? Well, we don't allege error as to his conclusion that reversal for further proceedings is appropriate as to the lay witness testimony error, which he already found. We have not confessed to that in this Court. However, his first error, of course, is to find that there was no error with this credibility finding. So he didn't say anything about remanding for payment or not. Our position on the creditors' true doctrine is this is exactly what the creditors' true doctrine was designed to do. As the Court said in Barney, quoted again in Vasquez, the purpose of the creditors' true rule is to discourage ALJs from reaching a conclusion first, then justifying it by ignoring evidence to the contrary. No, but it seems to me your back and forth with Judge Ikuda indicated that, depending on what evidence, let's say on remand, what evidence ALJ finds not credible, you know, your client may or may not be entitled to award benefits. That's right. That's not that clear. Is it? That would assume that we are not going to apply the creditors' true doctrine. Creditors' true is a judicial device saying if findings are inadequate in this way and finding that this testimony was credible would lead to a finding of disability, which it would. Vocational experts said so. Again, four different ways. That's when we apply the creditors' true doctrine. Of course, it's a matter of discretion. No question about that. So I guess my concern was it did, you know, assuming that it's not a harmless error, it wasn't clear that all of the factual issues had been resolved because there was his testimony on the one hand, which the ALJ indicated that he found not credible, and then there was evidence in the record that contradicted the claimant's testimony. So it seemed like there were still factual issues left to be resolved. That would assume that the creditors' true doctrine could apply only when there was no contradictory evidence. Well, it's a prudential rule in our circuit. The courts have discretion. We have discretion whether to apply it or not. They do. That's correct. But then the creditors' true rule wouldn't mean anything. If there was only the evidence that said we would have favored the claimant, then there would be no substantial evidence for a finding of nondisability. And on that point, the ALJ's decision would be reversible and remandable for payment. The creditors' true doctrine is a procedural rule. No question about it. Well, I guess you could still remand to develop the record, because as things change, as the time goes by, and ALJs have authority to request further examinations or call for further examinations. So I don't think that would make it meaningless. It would say in this particular situation, we don't think further development of the record would be as appropriate. Because some of the reasoning in the creditors' true cases seem to go to this person. This claimant has been around the block five times now, and enough is enough. I think sometimes the time in the case can have something to do with it. But I think this Court has to take the record that finds it. You can't really make a decision based on the possibility that sending the case back may result in some kind of further development. The date last insured, I believe, in this case is in 2009. So the likelihood of development of new evidence for this guy is very unlikely. His impairments are static. He fell 50 feet out of a tree. He's had 15 surgeries. I mean, these things have all happened. Well, he was cleared for work. I mean, several different doctors cleared him for work. I mean, I was a little bit – I wasn't sure how far that went, but at least initially he was told to go back. He was fine. He could do his job function. He was in the workers' compensation system, of course, and that happens. They'll say, you can go back to work. You try it, and you can't. And he's been through a fairly long course of this guy's treatment, and his abilities are by now fixed. Those decisions were made, and his statement was made back quite a ways. More than a year, by the way, after his injury. So they don't apply, at least for the year they would have to be disabled, to be found disabled for hosting social security. I'm going to have to take that down into my three minutes. Thank you. Good morning, Your Honors. Gerald Hill for the commissioner. Before I forget, I want to take issue with the statement that the claimant's testimony was uncontradicted as to limitations that would prevent him from engaging in competitive work. As the court seems to recognize, this case has six opinions from acceptable medical sources that the claimant can do a lot of sedentary work. One occupational therapist also released him for a range between sedentary and light. And in particular, the non-examining state agency physicians are directed to consider the claimant's ability to engage in work activities five days a week, eight hours a day with normal breaks. So that is the evidence that primarily contradicts the claimant's testimony about incontinence issues, the need to be absent from work too many days per month. So I very much dispute that this is a case with uncontradicted testimony. I want to start off with the standard of review that the court should apply in Harmon. This court held that abuse of discretion review applies to remand orders. The claimant, Mr. Treichler, is relying on the Lingenfelter case for de novo review of the ALJ's findings. Or district court's order affirming findings of ALJ. But that's not a case that involves a remand order. Mr. Treichler is in a similar situation as Mr. Harmon in the Harmon case. Both those claimants tried to get a review of findings that were affirmed by the district court,  so I don't think Harmon is reasonably read to permit a de novo review of findings that were affirmed by the district court. So under abuse of discretion review, the question is, is the district court's judgment beyond the pale of reasonable justification? And the commissioner's position certainly is that it's not. That language comes from the Harmon case. The ALJ didn't do what we said the ALJ has to do, though, right? In finding Mr. Treichler not credible, he didn't specifically identify the testimony he found not to be credible. He didn't offer specific clear and convincing reasons for not finding it credible, and he didn't identify the evidence explaining why he didn't find it credible. He didn't do any of that, correct? The commissioner's position is that, well, I'll take them one at a time. First, on specifically identifying testimony that he found not credible, the commissioner's position is that the ALJ did do that with his credibility finding and with his extensive summary of the claimant's testimony. He did not take it line by line and say, I find this testimony credible. But isn't that what the case law says he's supposed to do, the ALJ? The case law says he has to specifically identify the testimony he finds not credible and the evidence. Which he didn't do here. Well, he wrote a decision that summarized the conflicting evidence. You're really doing what, you know, for the ALJ here, what the ALJ should have done in his decision, right? Well, I think it's open to interpretation. Well, that's the problem. It's open to interpretation. You don't know what his finding is. I mean, in other words, this is a backwards finding. He reaches his conclusion, and then he says anything the claimant said that contradicts my conclusion is not credible. That's his only finding on credibility, right? I disagree that he's done it backwards. The ALJ expressly stated that his residual functional capacity assessment is based on his credibility findings and the medical evidence in the record. The ALJ said the weight that he gave the medical opinions that contradict the claimant's testimony, and he made a finding about the claimant's credibility. I do think that the ALJ could have been more specific and could have used better words. He could have said, these are my reasons. This Court has not always required ALJs to do that, at least under the specific legitimate standard. The Magellanes v. Bowen case is an example of that. No magic words are required. The Court was able to discern the ALJ's path in resolving the conflicts in the evidence in that case. And the ---- But here he made four different claims. He testified as to four different problems, which the vocational expert then said, if he has these problems, this person would be unemployable. Some of the problems that Mr. Treichler indicated contradicted medical evidence in the record. But the ALJ didn't tell me that that was why he was rejecting those ---- that testimony. So what is the Court supposed to do, given the ALJ's lack of identification of what he believed and didn't and disbelieved? The Court can reference the credibility finding, which says the extent to which the ALJ credited the claimant's testimony and determine which statements are within or without that credibility finding. So Mr. Treichler claims that he has bad pain days twice a week that result in him lying in bed. And the vocational expert says if he's missing two days a month, that would make him unemployable. And so what is the evidence in the record that the ALJ relied on, the evidence that showed that Mr. Treichler doesn't have bad pain days twice a week? Well, the ALJ did not specifically find that he doesn't, but the medical opinions that the ALJ gave weight to are the evidence that conflicts with those statements. And which medical opinion was he relying on that said that he doesn't have bad pain days twice a week? Well, the opinion doesn't expressly say that he doesn't have pain days. The opinion says he has the capacity to work eight hours a day, five days a week with normal breaks on a sustained and continuous basis. That's what the residual functional capacity assessments of the DDS physicians mean. And as you stand here, can you tell me what is the medical evidence that supports that? Well, those opinions are consistent with the independent medical examination by Dr. Ledbetter, also by the occupational therapist, Janica Ville-Scutter. This is at SER 160 to 161. Dr. Ledbetter's opinion supports a capacity for sedentary work. That's at Supplemental Excerpts of Record 429. Dr. Peterson and Dr. McNabb, the treating physicians, released him for sedentary work. So he was released for sedentary work, but was there anything in the record that said he doesn't have bad pain days twice a month, as all the V.E. said was enough to make him unemployable? The last thing I saw from Dr. McNabb says he still has significant amount of pain at times. So that's consistent with Mr. Treichler's testimony. Well, he has pain, but the question is to what limiting effect. Right. The medical opinions that this court has held that the ALJ may favor over a claimant's testimony, particularly that's why I rely on the DDS physicians' opinions, because they are instructed about the commissioner's regulations and the meanings of a sustained and continuous work activity and residual functional capacity assessment. Now, their opinions do not have to exactly mirror other opinions in the record. They just have to be consistent with, because these are their medical experts and they review all the records in the file. So it's not a yes. So your position is that the ALJ, that the objective medical evidence in the record that he was cleared for work in summary contradicts Mr. Treichler's testimony that he has bad pain days so frequently that he is not able to work? That is the position. And it's the Tonopetian case 242F3 at 1149 that says that these DDS physician opinions, when they are consistent with other independent evidence, are substantial evidence for an RFC assessment and for rejecting even the contrary opinions of treating physicians. So if they can withstand that, there should also be substantial evidence for an ALJ to discount a claimant's testimony. No question in the case the ALJ could have made his reasoning much more clear, but the method that he used to identify the testimony has not been held invalid. There's been a lot of criticism of this boilerplate language, but it's not really a legal objection. The courts seem hostile and some courts seem offended by it. But I did key cite one of the cases cited in the reply brief, and I found 10 Oregon and Arkansas and Missouri district court decisions that are rejecting this argument. So I think if we think about it, the ALJ has to make a finding. This language is a finding about credibility. It's not a reason for credibility. It is a finding. Some ALJs I've seen are responding to the criticism by lopping off the reference to the residual functional capacity assessment so that the finding says, I find the claimant's statement's not credible. That's even more general. I haven't seen objections to that language yet. Well, you know, but if we approve this kind of finding, I mean, we really are, because, you know, I'm sure they're busy, encouraging the Social Security ALJs to take shortcuts on their findings, right? I mean, you can't ‑‑ there's no doubt about that. I mean, you know, pretty soon all we'll ever see on these records is, well, whatever the claimant said that's contrary to my conclusion is not credible. I mean, that's all we'll be seeing, isn't it? Well, some of these cases that I've found, and I can ‑‑ I have a cite for one from Judge Mossman. It's the Bostick case, 212, if the Court's interested, 212 Westlaw, 786909. Wait a minute. 9 what? 09? 212 Westlaw, 786909. 786909. It can't be. There's no such thing as a 212 Westlaw. 2012 Westlaw. Oh, 2012. I'm sorry. Okay. And so what Judge Mossman says in that case is that the ALJ is permitted to state a conclusion in support of the reasons. We may have a disagreement about whether there are reasons given in this case. Yeah. But the ALJ is ‑‑ any error would be in the failure to give reasons that wouldn't be in using this language. The parties in this case agree that the language itself is not a reason and cannot sustain a credibility finding. It is the findings. So we need to look beyond it. We need to look to the evidence that was cited and the reasons are given. All right. You have, like, about three minutes left. If, assuming the panel were to not agree with you and find that this was error or maybe harmful error, I mean, what's your response to Mr. Kuhn's argument that this is a proper case to apply the credit as true and to remand for the payment of benefits? Well, if it's a harmful error case that's required to warrant a remand, then my response is that application of the credit as true rule in this case is going to conflict with the substantial evidence standard or review that applies to ALJ decisions because we have six medical or other source opinions and three of them clearly contradict the claimant's testimony and the commissioner's view. And so it would be application of the rule in this case would disregard the substantial evidence rule. It's also, as the Court, a standard of review. And as the Court has pointed out, it's a discretionary doctrine that need not be applied, and this would be a proper case to exercise discretion because Mr. Treitler, while he suffered grievous injuries, based on the record is not clearly disabled. Counsel, you have conceded that the findings could have been more specific. Yes. Or made more clear, I think was your term. Let's suppose we disagree with you and think that they were not specific and not clear. What should we do with this case? Should we send it back for specific findings so we know why the ALJ decided what he did, or should we order the benefits be granted? Well, send it back, and that's the relief that's given. And for the reason I just explained, it would disregard the substantial evidence standard of review to order this case paid because there are six medical opinions which this Court has held may constitute substantial evidence. So it's a failure. I guess it depends on how one characterizes the error, but the error can be in the failure to give sufficient reasons, but the credibility finding itself could be supported. And the ALJ made the required finding. This is not a case where he ignored evidence or disregarded evidence. He summarized all the evidence and considered it, including all of Mr. Treitler's statements, if it is a failure to give adequate reasons. And the Court cannot ascertain, reasonably ascertain the ALJ's path, then it's appropriate to send it back for further findings and explanation. Okay. If there are no other questions, the Commissioner asks that for the reasons in the brief and given here, that this Court affirm that the Court's judgment is not beyond the pale of reasonableness. Thank you. Thank you, Your Honor. Just briefly, I don't agree, of course, with the standard of review. We're talking about legal error here. This is not a use of discretion question as to whether the findings of the ALJ were actually legal error. They certainly were. I also disagree that these DDS doctors, which are non-examining checkbox doctors down in Salem who never see the claimant, that they contradict the testimony, for example, of the claimant that he has a certain number of bowel accidents or bladder accidents. They don't say anything about that. They are not vocational experts. They are doctors hired by the State to review the file, and that's all they do. They do not contradict the claimant's testimony. The fact that they say he can do sedentary work means they think he can sit for so long, stand for so long, et cetera. The ALJ didn't even agree with them that they could do a full range of sedentary work. For example, the claimant has to change positions every 15 minutes, according to the RFC. The counsel cites a number of cases unnamed about this argument and how often it's been rejected. This argument has never been rejected in a case in which the only thing the ALJ says about the credibility of the claimant is this, to the extent contradicting the RFC. In many cases, the ALJ recites this boilerplate and then goes on to make some other findings, and those cases we in the Plaintiff's Bar lose because the Court says, well, we don't like that finding, but over here we've got some other findings that are adequate, and as the Court knows, it's okay as long as you've got something in a finding that supports the conclusion. Substantial evidence is not the only reason this Court reviews these cases, and it's not this case. This case is about legal error. That's a different standard. Cases are reversed either for lack of substantial evidence or because of legal error. This is a case of legal error. If we have to show that there's no substantial evidence in order to get payment or to remand for payment, number one, that's not what these Court's cases have said so far. Number two, the creditor, as true doctrine, would be out in any case except that case in which there was evidence only on one side, you know, only a scintilla of evidence for nondisability. So the legal error you're referring to is a failure to make specific findings. Or to give reasons in support of those findings. That's correct. And so why shouldn't we send it back in order that those specific findings be made? Because this is exactly the kind of case where the creditor's true doctrine applies. But putting aside that doctrine, which we're aware of, could you answer Judge Allerkind's question about why is this the right case to do that as opposed to giving the ALJ to make the findings? Because this is the case in which, for the first time, it comes to the Court with only this finding in isolation. And if this finding in isolation can stand, this Court becomes the fact finder. This Court has to make that decision. I see that my time is up. No, but part of the rationale for that rule, I think, isn't it, that one, the Commissioner had the opportunity, you know, to make his record and reach a conclusion and so forth already one time around. I mean, this case has been around for, what, five or six years or longer? And it's about time, you know, to fish or cut bait. Isn't that what that rule comes down to? I think you could say that. Certainly, the rule has been well known for many years. It was completely disregarded. Thank you. Thank you. The case of Freichler v. Colvin stands submitted.
judges: Alarcon, Tashima, Ikuta